UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIENNE HURTADO,<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>CAROLYN W. COLVIN,<br><br>　　　　　　Defendant. | Case No. 16-cv-01075 NC<br><br>**ORDER GRANTING IN PART, DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**<br><br>Re: Dkt. Nos. 18, 23 |

Plaintiff Adrienne Hurtado seeks judicial review of the Commissioner of Social Security's denial of her claim for disability benefits. Hurtado argues the Administrative Law Judge (ALJ) erred in (1) giving little weight to her treating physician, a mental health examining physician, and her Workers' Compensation doctors; (2) finding her lacking in credibility; (3) finding her lay witness documents in support of disability lacking in credibility; and (4) failing to inquire as to conflicts between the Vocational Expert's (VE) testimony and the Dictionary of Occupational Titles (DOT). The Court finds the ALJ erred in giving too little weight to Dr. Richard Palmer's opinion, improperly finding Hurtado lacked credibility, and improperly failing to inquire as to conflicts between the VE's testimony and the DOT.

Therefore, the Court GRANTS in part and DENIES in part the cross-motions for summary judgment and REMANDS this case for further administrative proceedings consistent with this order.

Case No. 16-cv-01075 NC

## I. BACKGROUND

Hurtado filed for Social Security Disability Insurance and Supplemental Security Income benefits in September, 2011. AR 12. She alleged a disability onset date of October 29, 2008, on both applications. *Id*. Both claims were initially denied on May 25, 2012, and upon reconsideration on January 23, 2013. *Id*. Hurtado subsequently requested a hearing before an ALJ, which was held on February 27, 2014, before ALJ Brenton L. Rogozen. *See* AR 9-23. A medical expert, Arthur Brovender, M.D., and VE, Victoria Rei, testified at the hearing. AR 12. The ALJ found Hurtado not disabled. *Id*. Hurtado unsuccessfully appealed the ALJ's decision to the SSA Appeals Council. AR 1.

In his analysis, the ALJ used a five-step evaluation process. AR 13. If the ALJ found Hurtado disabled or not disabled at any of those steps, the evaluation stopped. *Id*. At step 1, the ALJ found Hurtado had not engaged in substantial gainful activity since the alleged onset date. AR 14. At step 2, the ALJ found Hurtado had the severe impairments of degenerative disc disease of the lumbar spine with chronic lower back pain. *Id*. However, the ALJ found Hurtado's "attention-deficit hyperactivity disorder (ADHD), depression, and anxiety, considered singly and in combination," were nonsevere. AR 14-15. Hurtado underwent neither treatment from a mental health specialist nor psychotherapy during her alleged disability. AR 15. The ALJ gave the opinion of the mental health consultative examiner, Dr. Richard Palmer, who did find mental impairments, little weight. *Id*.

In addition, in evaluating mental disorders, the disability regulations require consideration of four broad functional areas under section 12.00C of the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. These are: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or face; and (4) episodes of decompensation. *Id*. The ALJ found Hurtado had no limitations in activities of daily living, "no more than a mild limitation" in social functioning, mild limitations in concentration, persistence, or pace, and no episodes of decompensation. *Id*. Because the ALJ found Hurtado had no more than mild limitations in any of the first three areas, and no episodes of decompensation, the ALJ concluded Hurtado's mental impairments were

nonsevere. *Id.*

At step 3, the ALJ considered the listings for disorders of the spine, Listing 1.04; ADHD, Listing 12.02; depression, Listing 12.04; and anxiety disorder, Listing 12.06. AR 16. The ALJ found Listing 1.04 was not met "because there is no compromise of a nerve root," "no spinal cord compression, no evidence of nerve root compression" characterized by a number of factors and symptom, and "no spinal arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication." *Id.*

At step four, the ALJ found Hurtado had the residual functional capacity (RFC) to perform light work, except that she needed to "alternate between sitting and standing, defined as sitting for four (4) hours and standing for four (4) hours in a normal 8-hour workday." *Id.* When considering a claimant's symptoms, ALJs must follow a two-step analysis. *Id.* First, the ALJ must determine if there is an "underlying medically determinable physical or mental impairment(s)… that could reasonably be expected to produce the claimant's pain or other symptoms." *Id.* If the first step is met, the ALJ next evaluates "the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning." *Id.* ALJs must decide on the claimant's credibility based on the entire record. AR 16-17. Here, the ALJ found Hurtado fulfilled the first step, but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." AR 17.

Hurtado's file contained Workers Compensation examinations and opinions, treatment notes and a medical source statement from her treating physician, Dr. Michael Post, consultative examinations by Drs. Palmer, Jeffrey Karon and Lara Salamacha, and disability determinations by non-examining agency physicians. AR 18-20, 783. The ALJ gave little weight to Drs. Post's and Palmer's opinions, partial weight to Dr. Salamacha's opinion, and greatest weight to the opinions of Dr. Karon and the non-examining agency physicians. AR 15, 19-20. Also, the ALJ gave testifying medical expert Dr. Brovender's opinion great weight "to the extent it is consistent with" the ALJ's RFC. AR 20.

1    Hurtado's mother, Mary Ann Michaud, submitted a third party adult function report
2 and letter describing Hurtado's worsening condition over time, her daily activities, and
3 impairments. AR 20, 302-09, 411-12. Hurtado's neighbor, Linda Salzer, submitted a
4 similar letter. AR 20, 413-14. The ALJ found the accuracy of their statements
5 "questionable," as "they are not medically trained to make exacting observations as to the
6 date, frequencies, types, and degrees of medical signs and symptoms, or the frequency or
7 intensity of unusual moods or mannerisms." *Id*. The ALJ elaborated that because of their
8 relationship to Hurtado, "they cannot be considered disinterested," or people "whose
9 statements would not tend to be colored by affection for [Hurtado] and a natural tendency
10 to agree with" her symptoms and limitations allegations. *Id*. In giving their statements
11 minimal weight, the ALJ found most important that those statements, like Hurtado's, were
12 not consistent "with the preponderance of" the medical evidence. *Id*.

13    The ALJ also found Hurtado unable to perform her past relevant work as a stocking
14 clerk, inspector, and assembler of transformers. AR 21. The ALJ relied on the VE's
15 testimony to determine Hurtado could perform work as an assembler of small products, an
16 inspector, or as a marker. AR 22. Both parties consented to the jurisdiction of a
17 magistrate judge. Dkt. Nos. 9, 11.

18 **II.   LEGAL STANDARD**

19    A district court has the "power to enter, upon the pleadings and transcript of the
20 record, a judgment affirming, modifying, or reversing the decision of the Commissioner of
21 Social Security, with or without remanding the case for a rehearing." 42 U.S.C. § 405(g).
22    The decision of the Commissioner should only be disturbed if it is not supported by
23 substantial evidence or if it is based on legal error. *Burch v. Barnhart*, 400 F.3d 676, 679
24 (9th Cir. 2005). Substantial evidence is evidence that a reasonable mind would accept as
25 adequate to support the conclusion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir.
26 2005) ("[It] is more than a mere scintilla but less than a preponderance."). Where evidence
27 is susceptible to more than one rational interpretation, the ALJ's decision should be
28 upheld. *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir.1995).

## III. DISCUSSION

### A. The ALJ Properly Rejected the Opinion Of Dr. Post, Improperly Rejected the Opinion Of Examining Physician Palmer, Properly Analyzed Workers Compensation Records, and Properly Rejected Lay Witness Statements.

Hurtado argues the ALJ improperly weighed the medical evidence in the record. Dkt. No. 18 at 8. Specifically, Hurtado challenges the minimal weight given to treating physician Post's opinion, examining physician Palmer's evaluation, and the alleged lack of discussion into the Workers' Compensation medical records. *Id*. In addition, she argues the ALJ improperly discounted her mother and neighbor's lay witness statements. *Id*. Colvin argues the ALJ made no error in weighing the medical evidence or discounting the lay witness statements. Dkt. No. 23 at 4-12.

In social security disability cases, "[t]he ALJ must consider all medical opinion evidence." *Tommasetti*, 533 F.3d at 1041. Generally, more weight is given to the opinion of a treating physician than to that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *as amended* (Apr. 9, 1996). Similarly, the opinion of an examining physician is entitled to more weight than that of a non-examining physician. *Id*.

Where a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, it must be given "controlling weight." 20 C.F.R. § 404.1527(c)(2). The Commissioner must provide "clear and convincing" reasons for rejecting the un-contradicted opinion of treating and examining physicians. *Lester*, 81 F.3d at 830. Where contradicted, the opinions of treating and examining physicians may only be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31.

An ALJ can reject an un-contradicted treating physician's opinion, "by setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating his interpretation thereof, and making findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). An ALJ need not accept such an opinion if it is "brief, conclusory, and inadequately supported by clinical findings." *Id*. When rejecting a medical opinion, an

Case No. 16-cv-01075 NC         5

ALJ must do more than state his or her conclusions; the ALJ must express his or her "interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). Further, "an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language than fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014).

### 1. The ALJ Properly Rejected The Opinion of Treating Physician Post.

Dr. Post began treating Hurtado on April 5, 2013. AR 1139. The record contains treatment notes through January 14, 2014. AR 1081. Dr. Post provided a medical source statement dated February 20, 2014, stating Hurtado could only sit for 2 hours in a workday and would have to alternate between sitting and standing every 35 to 45 minutes. AR 1147-51. At that time, Hurtado's treatment consisted of physical treatment, lumbar epidural injections, and various pain medicines. AR 1150. Dr. Post stated Hurtado's disability began on October 29, 2008, the alleged onset date. AR 1147.

An ALJ need not accept a treating physician's opinion if it is "brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957. Also, where, as here, a treating physician's opinion is controverted by the opinions of other physicians, the treating physician's opinion may only be rejected for "specific and legitimate reasons" supported by substantial evidence in the record. *Lester*, 81 F.3d at 830-31.

Here, the ALJ took issue with Dr. Post's medical source statement because despite her conservative treatment and his recommendation that Hurtado look for a job in late 2013, he opined she was limited to light work and could sit for no more than two hours. AR 18, 1148. There were a number of conflicting medical opinions in the record that the ALJ pointed out were inconsistent with Dr. Post's opinion. Specifically, the ALJ noted Drs. Jeffrey Karon and Lara Salamacha found Hurtado capable of performing light and medium work, respectively. AR 18, 779, 1044. Thus, the ALJ had a number of "specific and legitimate reasons" for rejecting Dr. Post's opinion. *Lester*, 81 F.3d at 830-31. The

Case No. 16-cv-01075 NC           6

Court finds the ALJ did not err in giving minimal weight to Dr. Post's medical source statement based on the contradictory evidence in the record.

### 2. The ALJ Improperly Rejected the Opinion Of Examining Physician Richard Palmer.

Dr. Richard Palmer conducted a mental health consultative examination of Hurtado on April 22, 2012. AR 783. Dr. Palmer diagnosed Hurtado with ADHD. AR 786. Dr. Palmer assessed that Hurtado had a "poor ability to accept instructions from supervisor and interact with coworkers and the public," as well as a "poor ability to handle normal work related stress from a competitive work environment." AR 787. As a result, "[m]ental health symptoms will impact the claimant's ability to handle work related stress." *Id*. The ALJ rejected Dr. Palmer's opinion because Hurtado received no treatment from a mental health specialist, nor did she undergo psychotherapy during her alleged disability. AR 15.

The ALJ was required to provide "clear and convincing" reasons for rejecting Dr. Palmer's un-contradicted opinion. *Lester*, 81 F.3d at 830. Those reasons are not present, and by failing to rebut Hurtado's argument on this point, Colvin conceded such reasons were absent. Dkt. No. 23 at 3 (stating the ALJ had "good reasons" for giving Dr. Palmer's opinion little weight, "this determination was permissible even if there were no contrary opinions in the record," contrary to Ninth Circuit precedent).

Furthermore, the Court find persuasive Hurtado's unrebutted reference to *Lubin v. Comm'r of Soc. Sec. Admin.*, where the Ninth Circuit remanded an ALJ's decision because: (1) questioning the credibility of the claimant's complaints was not sufficient to reject the examining doctor's opinion; (2) nothing suggested the doctor's opinion was based more heavily on the claimant's complaints, which the doctor found credible, than on the doctor's observations; and (3) as an examining psychologist, the doctor at issue was an acceptable medical source within the meaning of 20 C.F.R. § 416.913(a). 507 F. App'x. 709, 711-12 (9th Cir. 2013). The Court expressly found that having a treating psychologist was not required to establish disability. *Id*. at 712. The decision here suffers from many of the same inadequacies criticized in *Lubin*, specifically, relying on the absence of treatment

Case No. 16-cv-01075 NC              7

in the record. Thus, the Court finds the ALJ improperly discredited the medical opinion of Dr. Palmer, and erred at step 2 in finding Hurtado's mental health impairments non-severe. This error was not harmless, because, as a result of finding those impairments non-severe, they were not considered at later steps of the disability determination.

### 3. The ALJ Properly Considered the Workers Compensation Medical Records.

Hurtado argues the ALJ "effectively ignored the evidence provided by" her treating Workers' Compensation (WC) physicians. Dkt. No. 18 at 9. Social Security Ruling (SSR) 06-03p provides that a disability determination made by another agency, such as state WC, is not binding on the SSA. Yet the same regulation requires the agency to nonetheless evaluate other agency's evidence, such that the evidence of disability or non-disability "cannot be ignored and must be considered." *Id*. The ALJ did not ignore the WC records. Indeed, he discussed them in some depth in the decision. AR 18. This argument lacks merit.

### 4. The ALJ Properly Rejected Lay Witness Statements.

Hurtado argues the ALJ improperly gave no weight to lay witness testimony offered in support of her disability. Dkt. No. 18 at 12. "In order to discount competent lay witness testimony, the ALJ must give reasons that are germane to each witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (internal citations and quotations marks omitted). Here, the ALJ gave a number of non-germane reasons for giving minimal weight to the lay witness statements; namely, accusing Hurtado's mother and neighbor of bias, and questioning the accuracy of their statements because they are not medically trained. AR 20. However, the ALJ also noted that their statements were not consistent with the "preponderance of the opinions and observations by medical doctors in this case." This is a germane reason for rejecting the statements. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence."). The Court finds no error.

### B. The ALJ Improperly Found Hurtado Less Than Fully Credible.

Hurtado also contends the ALJ erred in not finding her fully credible as to her symptoms and their severity because, according to the ALJ, "her 'allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty.'" Dkt. No. 18 at 14 (citing AR 14, 16). Colvin argues the ALJ made an appropriately specific credibility finding supported by the record. Dkt. No. 23 at 10-12.

An ALJ must use a two-step analysis to determine a claimant's credibility as to subjective pain or symptoms. *Garrison*, 759 F.3d at 1014. An ALJ first decides if the claimant presented "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotations omitted). If the claimant meets the first test, and the ALJ finds no malingering, the claimant's testimony regarding the severity of symptoms may only be rejected for "specific, clear and convincing reasons." *Id*. Where a credibility determination is a "critical factor" in the ALJ's decision, the ALJ must make an "explicit credibility finding" that is "supported by a specific, cogent reason for the disbelief." *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effects of the symptoms of which he complains." *Light v. Soc. Sec. Admin*., 119 F.3d 789, 792 (9th Cir. 1997). Lastly, "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

The ALJ found Hurtado not fully credible as to her symptoms and their severity because he could not verify with any certainty her claims of limited daily activities. AR 14, 16, 19. Second, the ALJ found that "even if the claimant's daily activities are truly as

Case No. 16-cv-01075 NC          9

limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision." AR 19. The ALJ concluded by stating Hurtado's statement were undermined by the medical evidence. AR 20-21. The Court cannot divine what the ALJ meant by "other reasons" or what specific medical evidence the ALJ referred to. The ALJ failed to point out any inconsistencies in Hurtado's testimony, or a reputation for untruthfulness. *Light*, 119 F.3d at 792.

Furthermore, the ALJ found Hurtado "may not be entirely credible" because of her daily activities of being able to cook, attend to personal needs, and take her daughter to school. AR 19, 21. Yet being "utterly incapacitated" is not a prerequisite to being disabled, and the ability to take care of certain activities does not mean they can work full time. *See Vertigan*, 260 F.3d at 1050. The ALJ found unpersuasive letters of support by Hurtado's mother and neighbor, as well as her mother's function report regarding Hurtado's condition because, as noted above: (1) they are not "medically trained to make exacting observations," (2) their statements were "colored by affection" for Hurtado, and (3) their statements were not consistent "with the preponderance of the opinions and observations" in the record. AR 20. Yet these documents described limitations on Hurtado's daily activities with examples, and in a simple and non-medical fashion. *See* AR 302-09, 411-12, 413-14. Where, as here, the ALJ's credibility determination was a "critical factor" in his decision, the ALJ must make an "explicit credibility finding" that is "supported by a specific, cogent reason for the disbelief." *Rashad*, 903 F.2d at 1231. The reasons given are vague and undefined, and neither specific nor cogent.

### C. The ALJ's Failure to Inquire Into a Potential Conflict Between the Vocational Expert's Testimony and the Dictionary of Occupational Titles Was Not Harmless Error.

The last issue is whether it was harmless error for the ALJ to fail to follow SSR 00-04p by failing to elicit "a reasonable explanation" for an apparent unresolved conflict between the VE and DOT before relying on the VE's testimony as evidence to support a disability determination. Colvin admits the ALJ erred by not obtaining an explanation

Case No. 16-cv-01075 NC                 10

from the VE for the "apparent unresolved conflict" between the VE and the DOT, but contends that such an error was harmless. Dkt. No. 23 at 13; SSR 00-04p.

SSR 00-04p "requires an ALJ to ask a VE whether the VE's testimony conflicts with the DOT. . . . Error in failing to follow SSP 00-04p is harmless only if: 1) there was no conflict; or 2) the VE provided sufficient support for his conclusion to justify any potential conflicts." *Edwards v. Astrue*, No. 12-cv-02056 KAW, 2013 WL 1891764, at *6 (N.D. Cal. May 6, 2013) (citing *Massachi v. Astrue*, 486 F.3d 1149, 1153-54, n.19 (9th Cir. 2007)). *Smith v. Astrue* deals with the same issue addressed here. No. 09-cv-03777 MHP, 2010 WL 5776060, at *11 (N.D. Cal. Sept. 16, 2010) ("the ALJ relied upon the vocational expert's testimony regarding available jobs that offered a sit/stand option without asking whether the expert's testimony was in conflict with the DOT. . . . The DOT does not address sit/stand options."). The court in *Smith* cited to *Valenzuela v. Astrue,* which held that where the DOT does not address sit/stand options, a VE's testimony "that certain positions would accommodate a sit/stand option was potentially in conflict with the DOT and warranted further inquiry upon remand." *Id*. at *12 (citing *Valenzuela*, No. 08-04001 WHA, 2009 WL 1537876 at *3 (N.D. Cal. June 2, 2009). The Court in *Valenzuela* also held "the potential inconsistency" between the VE's testimony and the DOT required remand. *Id*. (citing 2009 WL 1537876 at *3).

In support of its position that any error by the ALJ was harmless, Colvin relies on *Harvey v. Astrue*, which held that it was appropriate to consult a VE where the DOT does not contain information about an aspect of a job, like the existence of a sit/stand option, and that "[s]uch testimony supplements the DOT, rather than conflicting with it." No. 09-cv-02038 CW, 2010 WL 2836817, at *14 (N.D. Cal. July 16, 2010).

Like the court in *Edwards*, this Court disagrees with *Harvey*, because based on the hearing transcript, VE Rei's opinion—like the VE's opinion in *Smith*—may rely on "nothing more than guesswork or speculation." *Edwards*, 2013 WL 1891764, at *9. The Court cannot know. Here, the ALJ asked the following hypothetical question:

> Assuming we had a hypothetical person who's less than 50 years of age, with a GED, prior work similar to the claimant. Who can lift 20 pounds occasionally and 10 pounds frequently. But would have to alternate between sitting and standing only to this extent, half the day would be sitting, half the day would be standing. And it would be up to the claimant to do - - divvy it up whatever way she wants. She wanted to sit four hours in the morning and stand four hours in the afternoon or two and two or whatever she wants. Would there be any jobs customarily performed in the national economy which such a hypothetical person could perform?

AR 84. The ALJ then specified this hypothetical referred to jobs at the "light" exertional level. *Id*. VE Rei answered there were three jobs such a person could perform: an assembler of small parts, an inspector, and a marker. AR 85. The ALJ did not follow-up by asking whether there was a conflict between the DOT descriptions of those jobs and the sit/stand limitations in the hypothetical question. This was error more so than in *Harvey* because there, the VE stated the testimony did not deviate from the DOT, and explicitly stated he or she took into account the sit/stand option. 2010 WL 2836817, at *13. Thus, the Court finds the ALJ erred in failing to question the VE further.

## IV. CONCLUSION

For the reasons stated above, the Court finds the ALJ erred in giving too little weight to the opinion of Dr. Palmer, improperly finding Hurtado lacked credibility, and improperly failing to inquire as to conflicts between the VE's testimony and the DOT. Thus, the Court GRANTS in part, and DENIES in part the cross-motions for summary judgment, and REMANDS this case for further administrative proceedings consistent with this order.

**IT IS SO ORDERED.**

Dated: January 26, 2017

_____
NATHANAEL M. COUSINS
United States Magistrate Judge